**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| HIKMAT MANSOUR<br>17819 16th Ave. W<br>Lynnwood, WA  98036<br><br>            Plaintiff,<br><br>vs.<br><br>HON. ALBERTO GONZALEZ,<br>ATTORNEY GENERAL,<br>UNITED STATES<br>DEPARTMENT OF JUSTICE<br>950 Pennsylvania Ave., N.W.<br>Washington, D.C.  20530-0001<br><br>            Defendant. | Case No.<br><br>**Jury Trial Demanded** |

## COMPLAINT

1.      Plaintiff Hikmat Mansour ("Plaintiff") brings this action to redress deprivation of rights secured by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991 ("Section 1981"), and to obtain full and complete relief and to redress the unlawful employment practices described herein.

### JURISDICTION AND VENUE

2.      Jurisdiction of this Court over the federal claims in this action is invoked pursuant to 28 U.S.C. §§ 1331, 1334, 1343(4) and 42 U.S.C. §§ 2000e-5 and 2000e-16(c).

3.      Venue in this District is proper pursuant to 42 U.S.C. § 2000e-5(f)(3), because many of the unlawful employment practices and decisions described herein took place in Washington, D.C., a substantial part of the events or omissions giving rise to Plaintiff's claims arose in Washington, D.C., many of the employment records relevant to the unlawful employment practices and decisions described herein are maintained and administered in Washington, D.C., and Defendant has his principal office in Washington, D.C.

## THE PARTIES

4.      Plaintiff is an adult male native of Lebanon, residing at the captioned address.  Plaintiff is a Muslim.  Plaintiff has a darkened skin color and speaks with a noticeable accent - both traits being common to individuals of Plaintiff's Lebanese/Arabic/Middle-Eastern ancestry and ethnicity.

5.      Defendant is the Honorable Alberto Gonzales, Attorney General of the United States Department of Justice ("Defendant" or "DOJ").  He is sued in his official capacity as head of the DOJ and, as such, is amenable to suit as provided in 42 U.S.C. § 2000e-16(c).  The DOJ's headquarters are located at 950 Pennsylvania Ave., N.W, Washington, D.C., 20350-0001.

## STATEMENT OF FACTS

6.      Plaintiff has worked in a variety of positions for the Federal Bureau of Prisons ("BOP"), an agency within the DOJ, since 1995.[1]  Plaintiff worked as a

---

[1]     Plaintiff will refer to Defendant, the DOJ, the BOP and the administration of USP Lee interchangeably.

Correctional Treatment Specialist and then Case Manager at United States Penitentiary at Lee, Virginia ("USP Lee") from early September 2001 through March 2004. Plaintiff's most recent position at USP Lee was as a Safety Specialist at USP Lee since approximately April 2004. Plaintiff also was an EEO and Dispute Resolution Specialist while employed at USP Lee.

7. Since March 2006, Plaintiff has worked for Defendant at FDC SeaTac in Seattle, Washington.

8. During all times relevant, approximately 95% of the staff at USP Lee was Caucasian.

9. During all times relevant, Plaintiff was one of only two Muslim/Arabic/Middle-Eastern employees at USP Lee.

10. Plaintiff was/is an exemplary employee who far exceeded his employer's legitimate expectations and has no documented performance or disciplinary problems in his personnel file. Since 1995, Plaintiff has won no less than fifty awards for his outstanding efforts on behalf of Defendant.

11. Defendant was at all time relevant hereto aware of Plaintiff's race, color, national origin and religion.

12. On September 11, 2001, the United States suffered a devastating surprise terrorist attack resulting in unprecedented loss of life in New York, Washington, D.C., and Pennsylvania. Shortly thereafter, the United States embarked on a campaign to overthrow the Taliban regime in Afghanistan. At the

3

same time, the DOJ (including the BOP) embarked on a campaign to eradicate domestic terrorism.

13.     Only days after September 11, 2001 (and only a few days after Plaintiff began working at USP Lee), Plaintiff's coworkers and supervisors began a pattern of discriminatory and harassing treatment towards Plaintiff. This treatment was characterized by the use of racial and ethnic epithets and other offensive verbal references to Plaintiff's race, color, religion and national origin. Not wanting to inflame things and hoping the treatment would subside with time, Plaintiff tolerated this abuse to the best of his ability.

14.     Plaintiff was at all times relevant a member of the SORT team at USP Lee (analogous to a SWAT team). In the fall of 2003, during SORT team training, Plaintiff was physically and verbally assaulted by a fellow SORT team member, Officer Joe Shortt, in the presence of several other team members. Officer Shortt referred to Plaintiff as a "fucking terrorist," told Plaintiff to "go back to your country," and physically attacked Plaintiff.

15.     As noted below, this was not the only time Plaintiff was called a "terrorist" due to his race, color, national origin and religion at USP Lee. Plaintiff had also been referred to as "Hadji" by members of the SORT team.

16.     Although, the SORT team leader Lieutenant Bill Bowen witnessed the incident, and although USP Lee policy required Lieutenant Bowen to immediately report the incident to the administration at USP Lee, Lieutenant Bowen did not do so, but rather chose to "cover up" the incident. Lieutenant

4

Bowen informed Plaintiff that if Plaintiff reported the incident any further, he would be taken off the SORT team.

17. This was not the first time that the SORT team leadership had covered up such an incident and instructed SORT team members not to report the truth to USP Lee's administration.

18. Plaintiff went on injury leave for injuries sustained on the job in January 2004 and returned to USP Lee in March 2004. When Plaintiff returned to work from his leave, the discrimination and harassment to which he was subjected rose to a new level, such that Plaintiff could no longer sit by and tolerate the treatment.

19. On May 3, 2004, Plaintiff was humiliated by his supervisor in front of other USP Lee employees. Plaintiff promptly informed the administration at USP Lee of this action, which he felt was discriminatory and harassing.

20. In May 2004, upon his return to work as USP Lee's Safety Specialist, Plaintiff was forced to work in a cubicle and was denied the opportunity to work in an office that was specifically designated the "Safety Specialist" at USP Lee. Plaintiff's supervisor forced him to sit in a cubicle while the "Safety Trainee" – an individual with less seniority and essentially no experience – was allowed to use the Safety Specialist office.

21. On May 5, 2004, Plaintiff raised the office issue with his supervisor, Malachi Mitchell, who told Plaintiff that "[i]f you don't fucking like it here, go back where you came from." Mr. Mitchell also stated to Plaintiff, "I am the

5

fucking boss, you will do what I say, you are nothing," and "if you push the issue with the office, both of you will sit outside and the office will [be] turn[ed] into a storage room."

22. When Plaintiff subsequently raised this issue with the administration at USP Lee (also in May 2004), the administration promptly turned the Safety Specialist office into a storage closet, in contravention of the administration's contract with the union.

23. On May 14, 2004, after Plaintiff had raised his concerns about this treatment to USP Lee's administration, a co-worker sent Plaintiff an anti-Muslim e-mail. The e-mail stated, among other things:

- Remember the MUSLIM bombing of PanAm Flight 103
- Remember the MUSLIM bombing of the World Trade Center in 1993
- Remember the MUSLIM bombing of the Marine barracks in Lebanon
- Remember all of the AMERICAN lives that were lost in those vicious MUSLIM attacks.
- Remember to pass this along to every patriotic American you know.

24. On or around the same date, another co-worker sent an anti-Middle-Eastern/Arab/anti-Muslim e-mail to Plaintiff.

25. On May 21, 2004, another co-worker sent an anti-Muslim e-mail to all staff at USP Lee, including Plaintiff.

26. These e-mails were objectively offensive, discriminatory and harassing.

6

27. Plaintiff engaged in protected activity within the meaning of Title VII when he complained to management about the harassment and retaliation to which he was subjected in May 2004. This protected activity took place prior to Plaintiff's filing of an EEO complaint.

28. Plaintiff followed appropriate DOJ procedures in notifying the Warden (or "CEO") of USP Lee of the discriminatory and harassing treatment. At least some of these conversations between Plaintiff and administration officials took place in front of other witnesses. Plaintiff also communicated with USP Lee's administration in writing about these issues. Plaintiff also notified Defendant's headquarters in Washington, D.C. of these issues.

29. On or around May 27, 2004, Plaintiff's old office in USP Lee's "Unit L" was searched and ransacked. Several items were taken from the office, including EEO files, Dispute Resolution files, awards Plaintiff had received for his outstanding work, pictures of Plaintiff's children and copies of a transfer application that Plaintiff had submitted.

30. Plaintiff's first date of contact with the EEO office at USP Lee with regard to the instant matter was on May 24, 2004. Plaintiff filed his formal complaint in this matter on July 2, 2004.

31. Prior to Plaintiff's filing of his formal complaint in this matter in July 2004, Defendant took no steps to investigate Plaintiff's employment-related claims of disparate treatment, harassment and retaliation – despite Plaintiff's

7

numerous pleas to Defendant's agents and employees both at USP Lee and in Washington, D.C.

32. Not only did Defendant not take any steps to stop the harassment and retaliation, but Defendant took several actions that furthered the discriminatory treatment. For example, after Plaintiff engaged in protected activity by complaining to the Defendant about the aforementioned discriminatory treatment and initiating the EEO process, Defendant:

- Pulled Plaintiff from the SORT team, significantly changing his duties and the functions of his job;

- Refused to recertify Plaintiff as a Disturbance Control Instructor;

- Forced Plaintiff to resign from his position as an ADR Specialist, significantly changing his duties and the functions of his job;

- Selected a less experienced and less qualified coworker to be acting supervisor of USP Lee's Safety Department over Plaintiff, who had previously been acting safety manager at another BOP facility;

- Refused to respond to a voucher request from the Human Resources office at USP Atlanta, an institution to which Plaintiff was attempting to transfer, effectively depriving Plaintiff of the ability to obtain this position;

- Falsely accused Plaintiff of threatening a co-worker over the telephone and inappropriately investigated Plaintiff for this alleged conduct;

- Instructed one of Plaintiff coworkers and close friends not to associate with Plaintiff because Plaintiff was "not in good standing with the administration";

- Submitted false information to the Department of Labor's Office of Workers' Compensation, depriving Plaintiff of his ability to obtain benefits of employment.

33.     These actions of Defendant, many of which took place and were made in Washington, D.C., not only violated federal law, but they also violated the BOP's own internal policies, which explicitly provide that "there will be no restraint, harassment, intimidation, reprisal, or any coercion against any employee in the exercise of any rights … including the right to be free from discrimination based on their political affiliation, race, color, religion, national origin …" and which explicitly provide that the Warden of each institution "shall ensure that no person is retaliated against or harassed because of participation in the EEO complaints process or because of opposition to a policy or practice which the person believes is discriminatory."

34.     Defendant's Office of Internal Affairs eventually looked into some of Plaintiff's allegations – well after Plaintiff had filed his EEO complaint and well after he had complained of the harassment to USP Lee's administration – and determined that there were no less than three instances of misconduct committed against Plaintiff by his co-workers.  Upon information and belief, Defendant has not reprimanded or taken other action against these individuals.

35.     From late 2003 through late 2005, Plaintiff applied for no less than 117 transfers to remove himself from the increasingly hostile environment to which he was being subjected.   Defendant discriminated against Plaintiff, and retaliated against Plaintiff for his protected activity, by denying each and every one of these 117 transfer requests – and took adverse employment actions against Plaintiff by denying him each and every one of these 117 transfer requests (even

though Plaintiff was ranked as among the most qualified applicants for the vast majority of the positions). Some of these requests would have involved promotions, some would have involved demotions, and some would have involved no change in Plaintiff's benefits, compensation or job duties. Upon information and belief, the decision(s) to deny the requests were made at Defendant's headquarters in Washington, D.C.

36. In August 2004 and then again in late March 2005, Plaintiff wrote a letter to Defendant specifically noting that the conditions of his employment had become "increasingly difficult," and noting that he had "endured increasing levels of harassment, including verbal insults and humiliation, unauthorized search of my belonging, discrimination, and physical assault, all overtly based on my ethnic background and religion." In his March 2005 letter, Plaintiff once again requested that he be allowed a transfer, noting that he had already submitted over fifty applications for transfer as of that time. Defendant took no action in response to this letter.

37. Plaintiff subsequently applied for a Language Specialist position with Defendant at ADX Florence, Colorado. Defendant denied Plaintiff this position in favor of a less qualified applicant. Upon information and belief, Defendant did not even review Plaintiff's application. Defendant initially informed Plaintiff that it had not received his application. Defendant later informed Plaintiff that it had "found" Plaintiff's application and noted that

Plaintiff was rated as "Best Qualified" for the position, but nevertheless selected another individual for the position.

38.     Defendant also denied Plaintiff's request for a hardship transfer in August 2006, after Plaintiff and his family received death threats from Middle-Eastern/Arab/Muslim extremists. The FBI subsequently investigated the death threats and arrested the individual(s) who made the death threats.

39.     In early March 2006 – almost two years after Plaintiff filed his initial EEO complaint in this action and only after the Congressional community pressured Defendant to transfer Plaintiff to another facility, Defendant finally granted one of Plaintiff's transfer requests. Thus, Defendant agreed, in principle, to let Plaintiff transfer from USP Lee to FDC SeaTac in Seattle. However, Defendant retaliated against Plaintiff (and took yet another adverse employment action against Plaintiff) by demoting him into a position at a lower GS level that paid significantly less than Plaintiff's position at USP Lee. Defendant further retaliated against Plaintiff and treated him in a disparate fashion by attempting to condition Plaintiff's transfer to FDC SeaTac on Plaintiff's waiving his legal rights and remedies in his EEO action and removing Plaintiff from the work place on his first day at FDC SeaTac for refusing to so waive his legal rights and remedies.

40.     The harassment, disparate treatment, and retaliation to which Defendant subjected Plaintiff was so pervasive and severe as to cause Plaintiff significant mental distress and damages, such that Plaintiff has been in therapy since June 2004. Plaintiff's treating therapist and psychologist have diagnosed

11

Plaintiff with anxiety disorder, adjustment disorder with mixed anxiety and depressed mood. These mental health practitioners have also determined that the cause of these disorders was Defendant's actions vis-à-vis Plaintiff.

## COUNT I
### Title VII - Discrimination

41. The averments of paragraph 1 through 40 are incorporated herein by reference.

42. Defendant's actions, noted above, constitute unlawful discrimination against Plaintiff on account of Plaintiff's race, color, national origin and religion in violation of Title VII.

43. Defendant intentionally discriminated against Plaintiff with respect to the terms and conditions of his employment, including but not limited to, compensation and promotion, based on his race, color, national origin and religion in violation of 42 U.S.C. § 2000e *et seq.*, as amended.

44. Defendant's conduct has been intentional, deliberate, willful, and conducted in callous disregard of the rights of Plaintiff.

45. Defendant's policies have resulted in the disparate treatment of Plaintiff.

46. As a proximate result of Defendant's intentional discrimination, Plaintiff has suffered harm and is entitled to all legal and equitable remedies

available under Title VII, including, but not limited to, back pay, front pay, compensatory and punitive damages, and attorneys' fees and costs.

## COUNT II

### Title VII - Retaliation

47.     The averments of paragraphs 1 through 46 are incorporated by reference as if fully set forth at length.

48.     Defendant intentionally and unlawfully retaliated against Plaintiff for engaging in protected activities.  Defendant's actions constitute a violation of the anti-retaliation provisions of Title VII.

49.     As a proximately result of Defendant's intentional retaliation, Plaintiff has suffered harm and is entitled to all legal and equitable remedies available under Title VII, including, but not limited to, back pay, front pay, compensatory and punitive damages, and attorneys' fees and costs.

## COUNT III

### Section 1981 – Discrimination

50.     The averments of paragraph 1 through 49 are incorporated herein by reference.

51.     Defendant has intentionally discriminated against Plaintiff through its disparate treatment of Plaintiff, by denying him the same rights as are enjoyed by employees from outside of Plaintiff's stated protected classifications in the making, performance and modification of Plaintiff's employment relationship with

Defendant, and to the enjoyment of all benefits, privileges, terms, and conditions of that relationship in violation of Section 1981.  By virtue of Defendant's actions, Plaintiff was subjected to intentional discrimination and intentionally denied the benefits and privileges of employment solely because of his race, color, religion, ancestry and ethnic characteristics associated with his national origin in violation of Section 1981.

52. Defendant's conduct has been intentional, deliberate, willful, and conducted in callous disregard of the rights of Plaintiff.

53. As a proximate result of Defendant's intentional discrimination, Plaintiff has suffered harm and is entitled to all legal and equitable remedies available under Section 1981, including, but not limited to, back pay, front pay, compensatory and punitive damages and attorneys' fees and costs.

## COUNT IV

### Section 1981 - Retaliation

54. The averments of paragraphs 1 through 53 are incorporated herein by reference.

55. Defendant's actions constitute a violation of the anti-retaliation provisions of Section 1981.

56. By reason of Defendant's discrimination, Plaintiff has suffered harm and is entitled to all legal and equitable remedies available, including but not limited to, all wages and benefits he would have received but for the

discrimination, a position with Defendant with seniority or, in the alternative, front pay, compensatory and punitive damages, back pay, and attorneys' fees and costs.

## COUNT V

**Title VII and Section 1981 – Harassment/Hostile Work Environment**

57. The averments of paragraph 1 through 56 are incorporated herein by reference.

58. As set forth above, Plaintiff's workplace at all times relevant was permeated with discriminatory intimidation, ridicule, and insult that was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and create an abusive working environment.

59. The harassment that Plaintiff faced was based upon his race, color, religion, national origin, ancestry and ethnic characteristics associated with his national origin and unreasonably interfered with Plaintiff's work performance and/or was so severe or pervasive that it altered the conditions of his employment. The harassment would not have occurred except for Plaintiff's race, color, religion, national origin, ancestry and ethnic characteristics associated with his national origin. Defendant knew or should have known of the harassment in question and failed to take prompt remedial action.

60. By reason of Defendant's harassment, and Defendant's failure to take prompt remedial action, Plaintiff has suffered harm, including emotional distress and humiliation, and is entitled to all legal and equitable remedies

available, including but not limited to compensatory and punitive damages and attorneys' fees and costs.

## EXHAUSTION

61. The averments of paragraphs 1 through 60 are incorporated herein by reference.

62. Plaintiff's first date of EEO contact was on May 24, 2004.

63. Plaintiff submitting his formal EEO complaint of discrimination on July 2, 2004.

64. By letter dated March 9, 2007 Defendant rendered a Final Order on Plaintiff's formal EEO complaint.

65. This action is timely, as Plaintiff has brought this action within ninety (90) days of receipt of the Agency's Final Order.

66. Plaintiff has satisfied all administrative prerequisites to the filing of this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following relief:

A. Issue a declaratory judgment that the employment policies, practices, procedures, conditions, and customs of the Defendant violate the rights of Plaintiff as secured by Title VII and Section 1981;

B. Grant Plaintiff a permanent injunction enjoining Defendant, its agents, successors, and employees from continuing to violation Title VII and Section 1981;

C. An award of back pay, front pay, reinstatement, and restoration of benefits and seniority;

D. Any other appropriate equitable relief;

E. An award of compensatory and punitive damages, including damages for humiliation, embarrassment and emotional distress, to Plaintiff in an amount to be determined at trial;

F. An award of litigation costs and expenses, including reasonable attorneys' fees, to the Plaintiff;

G. Pre-judgment interest;

H. Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a jury for all issues so triable.

Dated:  June 4, 2007                                  Respectfully submitted,

//s// *Jason H. Ehrenberg*

_____
Jason H. Ehrenberg (#16481)
BAILEY & EHRENBERG PLLC
1155 Connecticut Avenue, N.W.
Suite 1100
Washington, D.C.  20036
Tel:  (202) 465-2927
Fax:  (202) 318-7071
jhe@becounsel.com

**Attorneys for Plaintiff**

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS
Hikmat Mansour

## DEFENDANTS
Alberto Gonzales, Attorney General, United States Department of Justice

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  88888
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Jason H. Ehrenberg
Bailey & Ehrenberg PLLC
1155 Connecticut Ave, N.W.
Suite 1100
Washington, D.C. 20036
(202.465.4729)

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
● 2 U.S. Government Defendant
○ 3 Federal Question (U.S. Government Not a Party)
○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES
(PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

○ **A. Antitrust**
☐ 410 Antitrust

○ **B. Personal Injury/Malpractice**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C. Administrative Agency Review**
☐ 151 Medicare Act
Social Security:
☐ 861 HIA ((1395ff))
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

○ **E. General Civil (Other)** OR ○ **F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ⊙ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☒ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
⊙ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE)
Race, color, national origin and religious discrimination and retaliation - Title VII of the Civil Rights Act of 1974 and 42 U.S.C. Section 1981

**VII. REQUESTED IN COMPLAINT**  ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ $5,000,000   Check YES only if demanded in complaint  JURY DEMAND: YES ☒ NO ☐

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  YES ☐  NO ☒  If yes, please complete related case form.

DATE June 4, 2007   SIGNATURE OF ATTORNEY OF RECORD  *[signature] Jason H. Ehrenberg*

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.